USDC SCAN INDEX SHEET










TKL     10/23/03    9:11
3:03-CR-02744   USA V. OLVAE-VALENCIA
*17*
*CRMEMSUP.*

1  STEVEN E. FELDMAN
   California Bar No. 56979
2  LAW OFFICES OF STEVEN E. FELDMAN
   934 23rd Street
3  San Diego, CA 92102
   (619) 232-8649
4
5  Attorney for Defendant **REBOLLEDO**

FILED

03 OCT 21 PM 3:58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA
## (HON BARRY TED MOSKOWITZ)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 03CR2744BTM |
| Plaintiff, | STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION. |
| v. | |
| JOSE REBOLLEDO-ESTUPINAN, et al | |
| Defendants | |

TO: CAROL LAM, UNITED STATES ATTORNEY, and
X. JAY ALVAREZ, ASSISTANT UNITED STATES ATTORNEY

## STATEMENT OF FACTS

On September 13, 2003, during the afternoon hours, a United States Coast Guard Maritime Patrol Aircraft was on patrol in international waters off the coast of Costa Rica. The crew observed a suspected "go fast" boat approximately 180 nautical miles from the United States Coast Guard Cutter Hamilton. The Hamilton was ordered to respond and at approximately 9:40 p.m. launched its helicopter. The helicopter crew eventually observed the go-fast and a second vessel tied up together for approximately 20 minutes.

1 After the boats separated the helicopter crew continued to monitor the go-fast
2 and observed approximately 6 members aboard, some of whom were dumping
3 packages over the side. Despite signals and commands from the helicopter telling the
4 go-fast to shut off its engine, warning shots were fired across the bow of the go fast
5 and a pursuit entailed lasting approximately five minutes when the helicopter was
6 able to successfully disable the engine with gunfire.

The Coast Guard ultimately boarded the go-fast; arrested the crew members; and seized approximately 99 bales and one brick, totaling 4939 pounds. These bales were field tested and tested positive for cocaine.

Ultimately, the crew of the go-fast was transferred to San Diego where they await trial before this court.

Because virtually no discovery has been provided to date, counsel must use the statements proffered in the probable cause affidavit. However, the defense reserves the right to contest any facts contained therein.

I

## MOTION TO COMPEL DISCOVERY

The defense now moves for production by the government of:

### 1. STATEMENTS OF THE DEFENDANT

Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure expressly requires production, upon request, of relevant written or recorded statements, made by the defendant to persons then known to be government agents, which the government intends to use at trial. The language of this portion of Rule 16 is mandatory, United States v. Thevis, 84 F.R.D. 47, 50 (N.D. Ga. 1979), and should be broadly interpreted:

> Rule 16(a)(1)(A) can fully serve its intended purpose only if the Government takes a broad view of what is relevant for purposes of that provision. We believe the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert. Ordinarily, a statement made by the defendant during the course of the investigation of the crime

charged should be presumed to be subject to disclosure, unless it is clear that the statement cannot be relevant. Where the Government is in doubt, the written or recorded statement should be disclosed, if a proper request is made.

United States v. Bailleaux, 685 F.2d 1105, 1114 (9th Cir. 1982). See also United States v. Caldwell, 543 F.2d 1333, 1352 n. 93 (D.C. Cir. 1974) ("The fact that the materials were used for impeachment and rebuttal does not make them any less relevant."), cert. denied, 423 U.S. 1087 (1976); Layton, 564 F. Supp. 1391, 1395-96 (D. Or. 1983). Rough or handwritten notes taken by the agents in any interview of the defendant are also discoverable. United States v. Poindexter, 727 F.Supp. 1470, 1483 (D.D.C. 1989); United States v. Layton, 564 F. Supp. 1395-96 (D.Or. 1983); United States v. Egan, 501 F. Supp. 1252, 1264 (S.D.N.Y. 1980).

Production of the defendant's written and recorded statements should include any memorializations of oral statements. United States v. Johnson, 525 F.2d 999, 1004 (2d Cir. 1975) (verbatim statements and summaries of conversations recorded after the fact both discoverable), cert. denied, 424 U.S. 920 (1976). A narrower definition of "statement" simply would encourage government agents to summarize interviews rather than record them verbatim. United States v. Morrison, 43 F.R.D. 516, 519 (N.D. Ill. 1967).

Production under Rule 16(a)(1)(A) should also include any and all tape recordings between an accused and the government agents. United States v. Walker, 538 F.2d 266 (9th Cir. 1976).

Mr. REBOLLEDO also requests any response to Miranda warnings that may have been given by him on the date of his arrest or subsequent thereto. See United States v. Agurs, 427 U.S. 97 (1976).

### 2. INVESTIGATIVE REPORTS, MEMORANDA AND NOTES

All arrest reports, investigator's notes, memoranda from arresting officers,

dispatch tapes, sworn statements, and prosecution reports pertaining to Mr.REBOLLEDO. Mr.REBOLLEDO specifically requests that all reports which relate to the circumstances surrounding his arrest or any questioning be turned over to him. These are available under Fed. R. Crim. P. Rule 16(a)(1)(B) and (C), Fed. R. Crim. P. Rule 26.2 and 12 (i). Defendant also requests that the Court order the preservation of all agents' rough notes for use at trial. In United States v. Harris, 543 F.2d 1247 (9th Cir. 1976), the court condemned the FBI practice of destroying rough interview notes taken by agents. The Ninth Circuit held that these notes must be preserved because they are potentially discoverable under the Jencks Act, 18 U.S.C. Section 3500, and Federal Rule of Criminal Procedure 16.

> We reiterate our holding, however, that the FBI must hereafter preserve the original notes taken by agents during interviews with prospective government witnesses or with an accused. The preservation of such evidence is necessary in order to permit courts to play their proper role in determining what evidence must be produced pursuant to the Jencks Act or other applicable law. (543 F.2d at 1253)

Harris' requirement of preservation of rough notes was based in part on the Ninth Circuit holding in United States v. Johnson, 521 F.2d 1318 (9th Cir. 1975) that rough interviews can be producible "statements" within the Jencks Act. Id. at 1319-20. Johnson held that the trial court has the responsibility to conduct a hearing to determine whether the notes should be produced under the Jencks Act. (Id. at 1320). As noted in United States v. Griffin, 659 F.2d 932, 937 fn. 2 (9th Cir. 1981), the Ninth Circuit has held in United States v. Spencer, 618 F.2d 605 (9th Cir. 1980) that Harris requires the preservation of notes by state as well as federal agents.

In view of Ninth Circuit case law requiring preservation and disclosure of rough notes of prosecution witness interviews, the only significant questions here are procedural. The defense seeks a procedure to resolve the issues at a pre-trial hearing in which the Court can determine whether any rough notes have been destroyed,

impose any appropriate sanctions for destruction of notes, determine what rough notes exist, and establish a schedule for production of all rough interview notes. This procedure accommodates the interests of all parties and prevents disruptions of the trial which often result from delayed resolution of this problem. It also avoids the necessity of a mistrial if, after a witness testified, the Court determines that notes have been destroyed.

To the extent that any rough interview notes have been destroyed, the appropriate sanction is to exclude testimony of any witness as to whom the rough interview notes were destroyed. This is clear from Rule 26.2 of the Federal Rules of Criminal Procedure and from 18 U.S.C. Section 3500(d) which states that if Jencks material is not produced, "the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared." Where rough interview notes are destroyed, Harris indicates that exclusion of testimony is required. The trial court's failure to apply this sanction was regarded as an error, although harmless error under the circumstances. United States v. Harris, 543 F.2d at 1253.

3. **WITNESS STATEMENTS**

Defendant requests that the government provide names, addresses and statements of all its witnesses, pursuant to Fed. R. Crim. P. Rule 26.2(a). Those statements should be made available pretrial so that there will not be unnecessary delay during trial. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).

Rule 16 is silent on the question of whether the defense may obtain a list of names and addresses of government witnesses. In the Ninth Circuit, however, this

Court's inherent discretionary power to order such discovery is settled. In United States v. Richter, 488 F.2d 170 (9th Cir. 1973), the Ninth Circuit stated, "[W]ide latitude is reposed in the District Court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice." Id. at 173. See also Arizona v. Manypenny, 672 F.2d 761, 765 (9th Cir. 1982); 8 J. Moore, Federal Practice Paragraph 16.05[4], at 16-58 and n. 56 (2d ed. 1972) (opining that disclosure of witnesses may be within the present Rule 16(b)), quoted in Richter, 488 F.2d at 175 n.17. Absent a compelling need to keep government witnesses' identities confidential, this Court should order the witness list disclosed.

### 4. IMPEACHING EVIDENCE

Any evidence that tends to impeach the credibility of any witness upon whom the government relies is exculpatory and must be disclosed. Giglio v. United States, 405 U.S. 150, 153-55 (1972). Defendant thus requests all such information including but not limited to the following:

(A) The identities and statements of those persons who have knowledge of information described in the indictment but whom the government does not intend to call, as well as evidence tending to impeach the credibility of all prospective government witnesses. Disclosure by the government of this requested information is compelled by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. See United States v. Miller, 529 F.2d 1125, 1128 (9th Cir. 1976) (Brady broadly interpreted to compel the "disclosure of evidence that in any way may be exculpatory") (emphasis in original), cert. denied, 426 U.S. 924 (1976). If the government is aware of persons who have knowledge of the acts it alleges as the bases for this prosecution, and if the accounts given by those persons tend to exculpate the defendant in any way, the government must divulge that information. See United States v. Cadet, 727 F.2d 1453, 1469 (9th Cir. 1984);

(B) Any evidence that any prospective government witness is biased or prejudiced against Mr. REBOLLEDO or has a motive to falsify or distort his or her testimony. Pennsylvania v. Ritchie, 480 U.S. 39 (1987); United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988);

(C) Any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction. See Fed. R. Evid. Rule 608(b), and Brady;

(D) Any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir.) cert. denied, 474 U.S. 945 (1985); and

(E) Any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197; Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980).

### 5. ACCESS TO OTHER DOCUMENTS AND PRESERVATION AND EXAMINATION OF PHYSICAL EVIDENCE AND OF SCIENTIFIC TEST EVIDENCE

(A) All other documents and tangible objects, including, books, papers, documents, photographs (whether Polaroid, those developed from 35mm film, or slides), videos, or photographs of buildings or places or copies of portions thereof which are material to Mr. REBOLLEDO's defense or intended for use in the government's case-in-chief or which were obtained from or belong to Mr. REBOLLEDO.

(B) Access to and preservation of all physical evidence in the case in its original form as seized (including the approximately 5000 pounds of cocaine); copies

7

of the reports of any examination or scientific tests performed thereon. Access to physical evidence is provided for under Fed. R. Crim. P. Rule 16(a)(1)(C); copies of or examinations and tests thereon is available under Fed. R. Crim P. Rule 15(a)(1)(D).

Rule 16(a)(1)(D) expressly requires that the defendant be permitted to inspect and copy the results or reports of scientific tests or experiments conducted by the government in this case. The government's privilege against producing internal reports or memoranda under Rule 16(a)(2) does not apply to this subsection of Rule 16.

To permit the defense to evaluate test reports or results and to prepare to cross-examine government experts, those experts' background materials, methodology, and worksheets should also be produced. In United States v. Dioguardi, 428 F.2d 1033, 1037-38 (2d Cir. 1970), cert. denied, 400 U.S. 825 (1970), the court admonished the government that it should not have offered computer printouts into evidence without providing the defendant computer programs, flow charts "and other materials needed for cross-examination of computer witnesses." Likewise, in United States v. Kelly, 420 F.2d 26, 29 (2d Cir. 1969), the court held that the government's failure to give notice of certain scientific tests so that the defense could "check the findings and conclusions of the government's experts" constituted "trial by ambush" and required reversal of the conviction. The defendant now asks for an order to assure against a similar ambush at trial.

**6. DOCUMENTS PERTAINING TO THE DEFENDANT'S CRIMINAL RECORD**

Fed. R. Crim. P. Rule 16(a)(1)(B) requires discovery of documents relating to the defendant's prior criminal record, and the defendant hereby requests such discovery. This request includes but is not limited to any and all court documents or other means by which the prosecution intends to establish Mr. REBOLLEDO's prior

record, if any, and the nature of that record. For example, Mr. REBOLLEDO requests the government to produce any information the government intends to rely on to show that Mr.REBOLLEDO has priors for "crimes of violence" or "controlled substance offenses." See U.S.S.G. §4B1.1.

### 7. **OTHER-ACT EVIDENCE**

Fundamental to the American system of criminal justice is the principle that "'a defendant must be tried for what he did, not for who he is.'" United States v. Foskey, 636 F.2d 517, 523 (D.C. Cir. 1980) (quoting United States v. Myers, 550 F.2d 1036, 1044 (5th Cir. 1977), cert. denied, 439 U.S. 847 (1978)).

To that end, the Federal Rules of Evidence carefully limit the circumstances under which evidence of other acts may be admitted against a defendant. Rule 404(b), for example, forbids admission of "[e]vidence of other crimes, wrongs, or acts" unless it is relevant to specified elements at issue in the case. Rule 608(b) limits impeachment of a witness by introduction of prior acts, while Rule 609 limits impeachment by prior conviction. As with all evidence, admission of other-acts evidence is permitted only if

> its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403; but see Id. 609 (a)(1) (omitting substantiality requirement of Rule 403, bars admission of prior felony conviction against accused unless probative value "outweighs its prejudicial effect to the accused").

Danger of unfair prejudice is inherent in other-act evidence, and improper admission of such evidence may require reversal. See e.g., United States v. Hodges, 770 F.2d 1475, 1479-80 (9th Cir. 1985). It is thus essential that the defendant be allowed a full opportunity to prepare to challenge the admissibility of such evidence. Such disputes are best resolved by an evidentiary hearing held outside the presence

9

of the jury pursuant to Fed. R. Evid. 104(c), and supplemented by written briefs. See United States v. Benton, 637 F.2d 1052, 1055-56 (5th Cir. 1981); Foskey, 636 F.2d at 525-26 & n.8. See also United States v. Valencia, 656 F.2d 412, 415 (9th Cir.), cert. denied, 454 U.S. 877 (1981); 1975 Advisory Committee Notes to Fed. R. Crim. P. 12.

Additionally, as of December 1, 1991, the Federal Rules of Evidence allow admission of evidence under Rule 404(b) only if,

> upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Accordingly the defendant asks this Court to order the government immediately to give notice of its intent to introduce evidence pursuant to Rule 404(b), 608, or 609, and to produce all such evidence to the defense. The defendant further requests the Court to order the government to supplement its notice and production whenever additional evidence becomes known. See Fed. R. Crim. P. 16(c).

Mr. REBOLLEDO requests a conference in advance of trial to resolve any issues raised by the government's intention to introduce evidence pursuant to Rule 404(b) and Rule 609.

### 8. EXCULPATORY INFORMATION

The defendant hereby seeks discovery of all exculpatory information not otherwise requested. The Due Process Clause of the Fifth Amendment to the United States Constitution requires the prosecution to disclose, on defendant's request, all "favorable" evidence "material either to guilt or to punishment." Brady v. Maryland, 373 U.S. at 87; see Pennsylvania v. Ritchie, 480 U.S. at 57 (Brady rule "well settled").

Evidence is favorable and material if it would "tend to exculpate" defendant "or reduce the penalty." Brady, 373 U.S. at 87. This includes information that the

government's evidence lacks credibility because, for example, it is perjurious or comes from a source biased in favor of the government. United States v. Bagley, 473 U.S. 667 (1985); Giglio v. United States, 405 U.S. 150; Napue v. Illinois, 360 U.S. 264 (1959). Evidence that tends to corroborate defendant's theory of the case also must be disclosed. United States v. Hibler, 463 F.2d 455, 460 (9th Cir. 1972). Similarly, evidence should be produced if it casts blame on a co-participant, a victim, or any other person, thus exculpating or vitiating defendant's guilt. Brady v. Maryland, 373 U.S. at 87-88; Hamric v. Bailey, 386 F.2d 390 (4th Cir. 1967).

The Ninth Circuit encourages liberal construction of the Brady disclosure rule:

> [A]n elemental sense of the fair play demands disclosure of the evidence that in *any* way may be exculpatory . . . [T]he government should resolve all doubts in favor of disclosure . . . since disclosure could cause no harm to the Government while suppression could very well prejudice the defendant.

Miller, 529 F.2d at 1128 (emphasis in original); see United States v. Agurs, 427 U.S. at 108.

Courts have been vigilant to assure implementation of the Brady doctrine during the pretrial process, when discovery is most useful. In Hamric, 386 F.2d at 393, the court stated: "Disclosure to be effective must be made at a time when the disclosure would be of value to the accused."

This Court should order immediate disclosure of all exculpatory evidence of which the government is aware.

9. **TIMELY DISCLOSURE**

The prosecution's duty to disclose encompasses all evidence of which it knows or to which it has access, and continues throughout the proceedings against the defendant. Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987); United States v. Agurs, 427 U.S. 97, 106 (1976); United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 110 S. Ct. 167 (1989); Fed. R. Crim. P. 16(c). Defendants ask this Court to

order the government -- on penalty of exclusion for nondisclosure, Fed. R. Crim. P. 16(d)(2); <u>United States v. Gee</u>, 695 F.2d 1165, 1169 (9th Cir. 1983) -- to produce immediately to the defense any discoverable material of which it becomes aware in the future.

Mr. REBOLLEDO also requests that the government provide all material available pursuant to Fed. R. Crim. P. 26.2 and 12(i) sufficiently in advance of trial or any other evidentiary hearing so as to avoid unnecessary delay prior to cross-examination.

## II

## **REQUEST TO REWEIGH THE EVIDENCE**

Because of the allegation that more than 4900 pounds of cocaine was seized from the Ocean and from the boat defendants were alleged to be occupying (which ultimately sank), it is essential that the defense be permitted to reweigh the drugs. This is necessary because moisture is absorbed by the packaging materials adding weight, thus the moisture of the alleged drugs may have improperly added weight to the contents.

The federal sentencing guidelines proscribe drug conduct by weight. Because the guidelines ultimately determine any sentence, it is a matter of due process to permit the defendant to reweigh the drugs because of the direct affect the weight of the drugs may have on any sentencing proceedings which may occur.

## III

## **LEAVE TO FILE ADDITIONAL MOTIONS**

This motion is written at a time before any discovery has been provided to the defense. Because counsel has not yet had the opportunity to review the discovery, it is requested that counsel be granted leave to file such other motions as the discovery suggests are necessary.

## IV
## JOINDER OF MOTIONS FILED BY CO-DEFENDANTS

The defense requests leave to join any relevant motions filed by the co-defendants. All counsel are presently handicapped by the lack of discovery. Nevertheless, it is anticipated that some or all of the co-defendant's attorneys will file motions. Some of those motions may be relevant to the defense of Mr. REBOLLEDO and for that reason counsel requests to join such motions as are deemed relevant to the competent defense of Mr. REBOLLEDO.

## IV
## CONCLUSION

For the foregoing reasons, the defendant requests this court grant his motions for discovery; to reweigh the drugs; for leave to file additional motions; and to join in any relevant motions filed by co-defendants counsels.

Respectfully submitted.

Date: October 21, 2003  By: _____
Steven E. Feldman,
Attorney for Jose Rebolledo-Estupinan

13

# CERTIFICATE OF SERVICE BY MAIL

I, Matt Conte, declare under penalty of perjury that the following is true and correct:

I am a citizen of the United States and am employed by the Law Office of Steven E. Feldman. I am over the age of eighteen years and not a party to the within action; my business address is 934 23rd Street, San Diego, California 92102.

I served the within NOTICE OF MOTIONS AND MOTIONS FOR 1) DISCOVERY; 2) TO REWEIGH THE DRUGS; 3) FOR LEAVE TO FILE FURTHER MOTIONS; and, 4) FOR JOINDER OF ANY RELEVANT MOTIONS FILED IN THIS CASE to the below named persons by personal delivery as follows:

Carol Lam, U.S. Attorney
880 Front Street, Rm. 6293
San Diego, CA 92101

X. Jay Alvarez, Assistant U.S. Attorney
880 Front Street, Rm. 6293
San Diego, CA 92101

Executed on this 21st day of October, 2003, at San Diego, California.

Matt Conte