USDC SCAN INDEX SHEET










TKL    1/5/04    8:11
3:03-CR-02744    USA V. OLVAE-VALENCIA
*32*
*CRMEMSUP.*

```
 1  STEVEN E. FELDMAN
    California Bar No. 56979
 2  LAW OFFICES OF STEVEN E. FELDMAN
    934 23rd Street
 3  San Diego, CA 92102
    (619) 232-8649
 4
    Attorney for Defendant REBOLLEDO
 5
```



FILED

03 DEC 31 PM 12:04

CLERK, US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA
## (HON BARRY TED MOSKOWITZ)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 03CR2744BTM |
| Plaintiff, | STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS |
| v. | |
| JOSE REBOLLEDO-ESTUPIAN, et al | Date: 1/23/04 |
| Defendants | Time: 1:30 p.m. |

## I
## INTRODUCTION

JOSE REBOLLEDO-ESTUPINAN (REBOLLEDO), the defendant in this case, by and through his attorney, Steven E. Feldman, pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution, Fed. R. Crim. P. 12, 16 and 26, and all other applicable statutes, case law and local rules, hereby moves this Court for an order suppressing any and all statements taken from him during any aspect of the investigation of the case.

## I
## STATEMENT OF FACTS

The following statement of facts is based solely upon information provided to the defense in discovery. The defense reserves the right to contest any fact which comes into dispute.



On 9/19/2003, Jose Rebolledo, following numerous days in custody and transport, was interviewed at the San Diego office of the DEA. Allegedly, prior to the start of the interview Mr. Rebolledo was read an FBI form notifying him of his rights. This was apparently done in Spanish.

After having his rights "further explained to him in the Spanish language", Rebolledo stated that he understood his rights and was willing to speak with the interviewing agents, SA Paul McCarthy, FBI and Senior Patrol Agent Ruby Nava, Bureau of Customs and Border Protection. SA Keith Byers of the FBI was also present when Rebolledo allegedly stated he understood his rights and was willing to speak with the investigating agents.

Afterwards, according to the reports, Rebolledo signed a notification of rights form and voluntarily provided information in Spanish.

Mr. REBOLLEDO allegedly stated as follows:

He is a taxi driver in the city of Buenaventura Alle De Cauca, Colombia. He was approached by a man a few weeks ago. He had never met the man before and did not know his name. The man offered Mr. Rebolledo two million Colombian pesos (approximately $700 U.S. Dollars) to help drive a boat for him. The unknown man offered to pay Rebolledo one million pesos up front and the second million when he returned. Mr. Rebolledo did not ask the man what he would be carrying in the boat.

Mr. REBOLLEDO described the man who hired him as a dark skinned white man with short, black hair. He did not know who he was or where he was from.

According to the report, after being hired, Mr. Rebolledo left Buenaventura in a tour boat that took him approximately ten kilometers along the coast to a place called La Bocana. The following night at approximately 9 p.m., Mr. Rebolledo left La Bocana in a small motorized canoe. He arrived at approximately midnight the same evening at the location of a small boat lying at anchor off the coast of Colombia. Mr. REBOLLEDO was dropped off at that boat, along with five other crew members who he did not know nor had he ever met before that night.

4

Based upon the content of the discovery it is difficult to ascertain whether or not the following information came from Mr. Robelledo or is more in the nature of a summary by the agents. The defendant, out of an abundance of caution, alleges that the following statements were also made by Mr. Rebolledo although counsel is frankly uncertain as to whether he is the source of this information.

The crew members took turns driving the boat. They did not carry any gear for fishing. Mr. Rebolledo said that they drove fast at night and slowly during the day. The boat was loaded with food for the trip, which was stored near the middle of the boat. The boat had four gasoline engines and four plastic tanks of gasoline next to the engines at the back of the boat. The boat was painted black and made of fiberglass. Mr. Rebolledo and the other boat drivers did not have a map to navigate. They navigated the boat with only a compass and directions to travel. The crew began steering the boat on a compass direction of 280 (approximately west bound) then later steered the boat toward a compass direction of 330 (a northwesterly course of travel).

The boat first left the coast of Colombia on Wednesday, 9/10/03 and was apprehended by the Coast guard in the middle of the night between Saturday 9/13/03 and Sunday 9/14/03.

## II.

## ANY STATEMENTS MADE BY MR. REBOLLEDO SHOULD BE SUPPRESSED

The Supreme Court has held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966).

This Court must examine first whether Mr. REBOLLEDO was in custody when he was questioned; then it must determine if any questioning constituted

interrogation. If this Court determines that Mr. REBOLLEDO was subjected to custodial interrogation, then it must determine if the government's agents complied fully with Miranda's dictates.

Here, the reports supplied to counsel appear to indicate that all of the statements Mr. REBOLLEDO made were made after he had been chased, the boat he was on sunk, then arrested and placed into custody.

### A. Mr. REBOLLEDO Was in Custody When He Was Questioned.

Custody is defined in the Miranda context as a situation in which the suspect reasonably believes he is not free to leave. United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980). In other words, a person is in custody if he has been arrested or otherwise deprived of his freedom of action in any significant way. See Orozco v. Texas, 394 U.S. 324, 327 (1969).

The discovery in this case indicates that Mr. REBOLLEDO was formally arrested when he was first questioned. Therefore, he was in custody.

### B. Agents Were Interrogating Mr. REBOLLEDO When They Interviewed Him.

The second prong of the Miranda test is interrogation. The definition of interrogation was established in Rhode Island v. Innis, 446 U.S. 291 (1980): words or actions by law enforcement officers "reasonably likely to elicit an incriminating response." This Court should look to the context of the questioning to determine whether an incriminating response was sought. For example, routine questioning about biographical information has been held to be interrogation when the questions are asked by Border Patrol agents who suspect the target of their questions of being a deported alien. United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1047 (9th Cir. 1990); United States v. Equihua-Juarez, 851 F.2d 1222, 1225-27 (9th Cir. 1988). Questioning a suspect about a car's ownership constitutes interrogation under Innis when agents have reason to believe the car was used in a bank robbery. United States v. Henley, 984 F.2d 1040, 1043 (9th Cir. 1993) ("an officer investigating a bank

robbery who has the getaway car but isn't sure who owns it should well know that asking a suspect if he's the owner of the vehicle is reasonably likely to elicit an incriminating answer").

Here, Mr. REBOLLEDO was not questioned until after agents had arrested him. It would be difficult to believe that the questions they posed at that time were not intended to elicit incriminating responses.

C. **Agents Failed to Comply with Miranda before Interrogating Mr. REBOLLEDO.**

In deciding Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court recognized that custodial interrogation presents such a serious threat to accused persons' Fifth Amendment right against self-incrimination that it directed law enforcement officers to take great pains to protect those rights. Thus, government agents have a duty to warn suspects of their full panoply of rights regarding interrogation <u>before</u> any custodial interrogation begins.

Mr. REBOLLEDO disputes any representation that he was properly advised of his Miranda rights prior to being questioned. Because agents failed to comply with the strict requirements of Miranda, any statements they extracted from Mr. REBOLLEDO through custodial interrogation must be suppressed. He also requests a full evidentiary hearing to establish all of the facts surrounding this custodial interrogation and to aid this Court in deciding these motions.

D. **The Government Must Prove that Any Post-Miranda Statements Were Made Pursuant to a Knowing and Voluntary Waiver.**

When interrogation continues without the presence of an attorney, and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel. Miranda, 384 U.S. at 475. A waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily to be effective. Schneckloth v. Bustamonte, 412 U.S.

218 (1973). The standard of proof for a waiver of this constitutional right is high. Miranda, 384 U.S. at 475. See United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great; the court must indulge every reasonable presumption against waiver of fundamental constitutional rights).

The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background experience, and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 464 (1983). See also United States v. Heldt, 745 F.2d at 1277; United States v. McCrary, 643 F.2d 323, 328-29 (5th Cir. 1981).

Mr. REBOLLEDO disputes any allegation that he gave a knowing and intelligent waiver and requests an evidentiary hearing to explore that issue.

E. **The Government Must Prove that All of Mr. REBOLLEDO'S Statements Were Voluntary Before They May Be Admitted Into Evidence.**

Even when the procedural safeguards of Miranda have been satisfied, a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession. Jackson v. Denno, 378 U.S. 368, 387 (1964). The government bears the burden of proving that a confession is voluntary by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 483 (1972).

A statement must be the product of a rational intellect and free will to be voluntary. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne, the totality of the circumstances must be considered. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). A confession is deemed involuntary whether coerced by physical intimidation of psychological pressure. Townsend v. Sain, 372 U.S. 293, 307 (1962). It must not be extracted by any sort of threats of violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. United States v.

8

Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

Mr. REBOLLEDO disputes any representation that his statements were made voluntarily, and he requests an evidentiary hearing to establish the voluntariness of any statements made by him to agents of the United States. 18 U.S.C. §3501; Federal Rule of Evidence 104(c).

## CONCLUSION

For the foregoing reasons, Mr. Mr.REBOLLEDO requests a hearing on his Motion to suppress statements and an order suppressing his statements.

Respectfully submitted.

Date: 12/30/03

Steven E. Feldman
Attorney for defendant

# CERTIFICATE OF SERVICE

I, Matt Conte, declare under penalty of perjury that the following is true and correct:

I am a citizen of the United States and am employed by the Law Office of Steven E. Feldman. I am over the age of eighteen years and not a party to the within action; my business address is 934 23rd Street, San Diego, California 92102.

I served the within NOTICE OF MOTION AND MOTION FOR SUPPRESSION OF STATEMENTS and POINTS AND AUTHORITIES to the below named persons by personal delivery as follows:

Carol Lam, U.S. Attorney
880 Front Street, Rm. 6293
San Diego, CA 92101

Michael F. Kaplan, Assistant U.S. Attorney
880 Front Street, Rm. 6293
San Diego, CA 92101

Executed on this 31st of December, 2003, at San Diego, California.

Matt Conte